UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

THE TRUSTEES OF THE LOCAL 807 LABOR-
MANAGEMENT PENSION FUND and THE
LOCAL 807 LABOR-MANAGEMENT PENSION
FUND,

                              Plaintiffs,

              - against -

CITY ELEVATOR CORP.,

                              Defendant.

-------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
19 CV 4688 (ENV) (CLP)

**POLLAK**, Chief United States Magistrate Judge:

      On August 14, 2019, plaintiffs Trustees of Local 807 Labor-Management Pension Fund

(the "Trustees") and Local 807 Labor-Management Pension Fund (together, "plaintiffs")

commenced this action against City Elevator Corp. ("City Elevator"), pursuant to Sections 4201

through 4225 and 4301 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as

amended, 29 U.S.C. §§ 1381-1405, and 1451.

      Despite proper service on the defendant on August 16, 2019, defendant failed to answer

or otherwise respond to the Complaint. On September 24, 2019, plaintiffs requested entry of a

certificate of default, and on September 27, 2019, the Clerk of Court entered a certificate of

default. On October 16, 2019, plaintiffs moved for a default judgment, and on October 24,

2019, the Honorable Eric N. Vitaliano referred the motion to this Court to determine liability

and damages and to issue a Report and Recommendation. Defendant has failed to submit any

paperwork to the Court in response to the motion for default judgment.

For the reasons set forth below, the Court respectfully recommends that a default judgment be entered against defendant City Elevator.  The Court further recommends that plaintiffs be awarded **$496,747.00** in damages for withdrawal liability, prejudgment interest, liquidated damages, and attorneys' fees and costs.

## FACTUAL BACKGROUND

According to the First Amended Complaint, the plaintiffs Trustees are fiduciaries of the Local 807 Labor-Management Pension Fund (the "Fund"), an employee pension benefit plan and multiemployer plan within the meaning of Section 3(2) and 3(37) of ERISA, 29 U.S.C. §§ 1002(2) and 1002(37).  (Compl.[1] ¶¶ 4, 5; see also Casanova Aff.[2] ¶¶ 7, 9, Exs. B,[3] C[4]).  The Fund's office is located at 32-43 49th Street, Long Island City, N.Y.  (Compl. ¶ 4).  Plaintiffs allege that defendant City Elevator is a corporation with its principal place of business located at 1384 Broadway, New York, N.Y.  (Id. ¶ 6).  Plaintiffs further allege that City Elevator was an "employer" within the definition of Section 3(5) of ERISA, and a party to collective bargaining agreements ("CBA") with Local 807 IBT (the "Union").  (Id. ¶¶ 6, 7).  The CBAs required defendant to make contributions to the Fund in connection with all work performed within the trade and geographical jurisdiction of the Union.  (Id.)

---

[1] Citations to "Compl." refer to the First Amended Complaint, filed on August 15, 2019, ECF No. 4.

[2] Citations to "Casanova Aff." refer to the Affidavit of Teresa Casanova, dated October 16, 2019, ECF No. 10-1.

[3] Citations to "Ex. B" refer to the Collective Bargaining Agreement, filed as Exhibit B to the Motion for Default Judgment, ECF No. 10-3.

[4] Citations to "Ex. C" refer to the Trust Agreement, filed as Exhibit C to the Motion for Default Judgment, ECF No. 10-4.

According to the First Amended Complaint, during the plan year ending on August 31, 2017, City Elevator ceased all covered work and ceased to have an obligation to make contributions to the Fund, causing a complete withdrawal from participation in the Fund within the meaning of Section 4203(a) of ERISA, 29 U.S.C. § 1383(a).  (Id. ¶ 8; see also Casanova Aff. ¶ 11 (stating that the defendant "effected a complete withdrawal from the Fund during the Fund's 2017-2018 plan year. . .)).

Pursuant to ERISA and the Agreement and Declaration of Trust (the "Trust Agreement"), this withdrawal rendered City Elevator liable to pay the Fund withdrawal liability, which figure was calculated by plaintiffs' actuary.  (Compl. ¶ 9; Casanova Aff. ¶¶ 10, 12, Ex. C, Art. IV, § 6).  Pursuant to Section 4219(b)(1) of ERISA, plaintiffs notified defendant by letter dated May 10, 2018, that City Elevator owed the Fund $365,772.00 in withdrawal liability.  (Compl. ¶ 10; Casanova Aff. ¶ 14).  The Notice and Demand for Withdrawal Liability, which was sent via certified mail, informed defendant City Elevator that it had until August 1, 2018 to make the first of 80 quarterly payments of $4,940.75.  (Compl. ¶ 10; Casanova Aff. ¶ 14, Ex. D[5]).

Defendant City Elevator did not request review of the determination of withdrawal liability and did not identify any inaccuracies in the determination of unfunded vested benefits in accordance with Section 4219(b)(2) of ERISA, 29 U.S.C. § 1399(b)(2).  (Compl. ¶ 11; Casanova Aff. ¶ 15).  Nor did defendant initiate arbitration as authorized by Section 4221 of ERISA, 29 U.S.C. § 1401(a).  (Id.)  A failure to timely initiate arbitration waives any right City Elevator may have had to contest the withdrawal liability assessment.  (Compl. ¶ 12).

---

[5] Citations to "Ex. D" refer to the May 10, 2018 letter from the Local 807 Labor-Management Health & Pension Funds, captioned "NOTICE AND DEMAND FOR WITHDRAWL LIABILITY," filed as Exhibit D to the Motion for Default Judgment, ECF No. 10-5.

According to plaintiffs, City Elevator made the first three quarterly payments[6] but failed to make the fourth payment, which was due on May 1, 2019.  (Casanova Aff. ¶¶ 16, 17). According to the First Amended Complaint, the Fund sent a letter dated May 10, 2019, notifying defendant that it was in default and that if the default was not cured in 60 days, the Fund would institute legal collection proceedings to recover the entire amount of withdrawal liability, interest, liquidated damages, and the cost of collection.  (Compl. ¶ 15).  In the Casanova Affidavit, submitted in connection with the Motion for Default Judgment, plaintiffs indicated that they received the third installment payment and then sent the letter notifying defendant of the default on May 10, 2019.  (Casanova Aff. ¶ 18).  Plaintiffs provided notice of the default to Mitchell Hellman, an officer and principal of City Elevator.  (Compl. ¶ 16).

According to the Casanova Affidavit, the Fund office informed Mr. Hellman by letter dated May 10, 2019 that because defendant had failed to cure the default, defendant was liable to the Fund for the remainder of the withdrawal liability and that plaintiffs would institute legal action to recover the withdrawal liability, interest, liquidated damages, and legal fees.  (Casanova Aff.  ¶ 18, Ex. E[7]).  As of the date of the filing of the Amended Complaint, City Elevator had

---

[6] The Court notes that plaintiffs' Amended Complaint states that "City failed to make the *third* quarterly withdraw liability payment, which was due May 1, 2019."  (emphasis added) (Compl. ¶ 14).  Plaintiffs' other papers indicate that the third payment was received, and that City Elevator failed to make the fourth payment.  Since all of plaintiffs' papers are in agreement that it was the May 1, 2019 payment which was missed (see Compl. ¶ 14; Casanova Aff. ¶¶ 16 17; Plaintiffs' Memorandum of Law in Support of Their Motion for a Default Judgment, dated October 16, 2019 ("Pls.' Mem.") at 1, 4, 6, ECF No. 10-11), the Court concludes that the Amended Complaint erred in describing the missed payment as the "third" payment.  (See discussion infra at 9-10).

[7] Citations to "Ex. E" refer to the May 10, 2019 letter from the Local 807 Labor-Management Health & Pension Funds, captioned "NOTICE OF DEFAULT," filed as Exhibit E to the Motion for Default Judgment, ECF No. 10-6.

made no additional payments to plaintiffs for amounts owed in withdrawal liability.  (Compl. ¶ 18).

Plaintiffs seek an award of damages equal to the remainder of the withdrawal liability owed, plus interest, liquidated damages, costs and attorneys' fees.

DISCUSSION

A. <u>Default Judgment</u>

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for entry of a default judgment.  <u>See</u> <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  <u>See</u> <u>id.</u>; FED. R. CIV. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default").  Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment.  <u>See</u> FED. R. CIV. P. 55(b).

The Second Circuit has warned that default judgment is an extreme remedy that should be used only when the need to move a case forward expeditiously trumps a party's right to be heard before a court of law.  <u>See</u> <u>Meehan v. Snow</u>, 652 F.2d 274, 277 (2d Cir. 1981).  While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard."  <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d at 95-96.  Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are

5

"generally disfavored," and doubts should be resolved in favor of the defaulting party.  Id.
Accordingly, a plaintiff is not entitled to a default judgment as a matter of right simply because a
defendant is in default.  See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162
(S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to
avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether
to grant a default judgment, including:  (1) whether the grounds for default are clearly
established; (2) whether the claims were pleaded in the complaint, thereby placing the defendants
on notice, see FED. R. CIV. P. 54(c) (stating "[a] default judgment must not differ in kind from, or
exceed in amount, what is demanded in the pleadings"); Enron Oil Corp. v. Diakuhara, 10 F.3d
at 95-96; cf. King v. STL Consulting, LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5
(E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that
accrued during the pendency of a litigation, so long as the complaint put the defendant on notice
that the plaintiff may seek such damages); and (3) the amount of money potentially involved –
the more money involved, the less justification for entering the default judgment.  Hirsch v.
Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992).
Additionally, "the Court may consider whether material issues of fact remain, whether the facts
alleged in the complaint state a valid cause of action, whether plaintiff[s] ha[ve] been
substantially prejudiced by the delay involved, and whether the default judgment may have a
harsh effect on the defendant."  Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F. Supp.
2d 385, 393 (S.D.N.Y. 2012) (internal citations omitted).

The burden is on the plaintiff to establish its entitlement to recovery.  See Greyhound
Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506

6

U.S. 1080 (1993).  When a default judgment is entered, the defendants are deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability, but not as to damages.  Id.  Thus, for the purposes of an inquest, the court accepts as true all factual allegations in the complaint, except those claims relating to damages, and the plaintiff is "entitled to all reasonable inferences from the evidence offered."  See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).  While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing."  Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989).

Here, plaintiffs bear the burden of demonstrating the extent of their damages as to each element of the award they seek.  In support of their motion, plaintiffs have submitted the Affidavit of Teresa Casanova, Fund Manager for the Local 807 Fund.  (Casanova Aff. ¶ 1). Despite proper service of both the Amended Complaint and plaintiffs' Motion for Default Judgment, defendant has defaulted and has not submitted any objections or challenges to the papers submitted by the plaintiffs.  (Casanova Aff. ¶ 3; ECF 6; ECF 10-14).  Thus, the Court makes its recommendation based upon the documents submitted by plaintiffs in support of their Motion for Default Judgment.

B.  Withdrawal Liability

ERISA specifies that a complete withdrawal occurs when an employer "(1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan."  29 U.S.C. § 1383(a).  Upon such withdrawal, the plan sponsor is empowered to "(1) determine the amount of the employer's withdrawal liability, (2) notify the employer of the amount of the withdrawal liability, and (3) collect the amount of the withdrawal

liability from the employer." 29 U.S.C. § 1382. The employer then has 90 days to request that

the sponsor review its withdrawal liability determination and submit any disputes about the

amount of liability to arbitration. 29 U.S.C. §§ 1399(b)(2); 1401(a)(1). Any employer who fails

to initiate such arbitration waives its right to contest the amount of withdrawal liability assessed

by the plan sponsor, and a district court will not make an independent determination as to the

reasonableness of the calculations. See Gesualdi v. Seacoast Petroleum Products, Inc., 97 F.

Supp. 3d 87, 98 (E.D.N.Y. 2015); see also Trustees of Local 813 Ins. Fund v. Freedom

Demolition, Inc., 2014 WL 5305983, at *5 (noting that "[b]y failing to initiate an arbitration

proceeding within sixty days thereafter, defendant waived its right to contest the amount of

withdrawal liability calculated by plaintiffs"). Further, "[i]n the event of a default, a plan

sponsor may request immediate payment of the outstanding amount of an employer's withdrawal

liability, plus accrued interest." 29 U.S.C. § 1399(c)(5).

Here, plaintiffs allege that City Elevator effectuated a complete withdrawal from the

Fund during the 2017 to 2018 plan year. (Compl. ¶ 8; Casanova Aff. ¶ 11). Plaintiffs allege that

as a result of this complete withdrawal, City Elevator became liable for $365,772.00 in

withdrawal liability. (Compl. ¶ 10; Casanova Aff. ¶ 13). The Fund notified City Elevator of this

withdrawal liability by letter dated May 10, 2018. (See generally Casanova Aff. ¶ 14, Ex. D).

This letter established a repayment schedule, under which City Elevator's first payment was due

on August 1, 2018. (Id.) After City Elevator failed to make its required May 1, 2019 payment,

the Fund notified City Elevator by letter dated May 10, 2019 that it would be held in default if

payment was not received within 60 days. (Casanova Aff. ¶¶ 17, 18, Ex. E). A second letter was

sent on July 19, 2019, again warning City Elevator of its obligation to pay. (Casanova Aff. ¶ 20,

Ex. F[8]).  The defendant has not made any payments since May 2019, nor has there been any attempt to initiate arbitration proceedings to contest the amount of the withdrawal liability.  (Casanova Aff. ¶¶ 15, 19, 21).  As such, the Court finds that plaintiffs have established liability on the part of City Elevator to pay withdrawal liability.  However, because the defendant has not sought to commence arbitration proceedings within the period set by the statute, defendant has waived its right to contest the amount of withdrawal liability owed, see Trustees of Local 813 Ins. Fund v. Freedom Demolition, Inc., 2014 WL 5305983, at *5, and the Court will not investigate the reasonableness of the plaintiffs' assessment of withdrawal liability.

Of the $365,772.00 in total withdrawal liability as determined by the Fund, plaintiffs now seek $350,949.75 in damages, representing the amount of withdrawal liability remaining after deducting certain payments made by defendant prior to the default.  The Court notes that there is a discrepancy between the allegations in the Amended Complaint as to what payments were made and the papers submitted in connection with the motion for default judgment.  Specifically, in the Amended Complaint, it is alleged that "City failed to make the *third* quarterly withdrawal liability payment, which was due May 1, 2019." (Compl. ¶ 14) (emphasis added).  Plaintiffs' other papers indicate that the third payment was received, and that City Elevator failed to make the fourth payment.  (Casanova Aff. ¶¶ 16 17; Pls.' Mem. at 1, 4, 6)).  Since all of plaintiffs' papers, including the Amended Complaint, are in agreement that it was the May 1, 2019 payment which was missed (compare Compl. ¶ 14 with Casanova Aff. ¶¶ 16, 17; Pls.' Mem. at 1, 4, 6; Exs. E, F), the Court concludes that Amended Complaint simply erred in describing the missed May 1, 2019 payment as the "third" payment.

---

[8] Citations to "Ex. F" refer to the July 19, 2019 letter from the Local 807 Labor-Management Health & Pension Funds, captioned "Notice of Uncured Default," filed as Exhibit F to the Motion for Default Judgment, ECF No. 10-7.

This is consistent with the plaintiffs' records, which show the payments that have been made. According to the schedule for quarterly payments, the defendant was required to pay $4,940.75 each quarter, beginning on August 1, 2018, with additional payments due November 1, 2018, February 1, 2019, and May 1, 2019. In reaching the requested amount of $350,949.75, plaintiffs have deducted $14,822.25, which is the equivalent of three payments of $4,940.75 from the original sum of $365,772.00. (See plaintiffs' Proposed Judgment (ECF No. 10-13); plaintiffs' Statement of Damages (ECF No. 10-13); plaintiffs' May 10, 2018 letter (ECF No. 10-5); plaintiffs' May 10, 2019 letter (ECF No. 10-6); plaintiffs' July 19, 2019 letter (ECF No. 10-7); the Fund's Actuarial Calculation (ECF No. 10-8); Pls.' Mem. at 6).

Based on the above, the Court is satisfied that, despite the inconsistency in plaintiffs' Amended Complaint, three quarterly payments in the total amount of $14,822.25 were rendered to plaintiffs by City Elevator. (Pls.' Mem. at 6; Casanova Aff. ¶¶ 14-16). Subtracting $14,822.25 from the total amount of withdrawal liability owed – $365,772.00 – the Court respectfully recommends that plaintiffs be awarded **$350,949.75** in withdrawal liability.

C. Prejudgment Interest

Plaintiffs have also sought prejudgment interest on the withdrawal liability owed by the defendant. Pursuant to ERISA, plaintiffs are entitled to an award of interest on unpaid withdrawal liability calculated from the date the first liability payment was due until the date of final judgment. 29 U.S.C. § 1132(g)(2)(B). According to the Trust Agreement, the applicable interest rate to be applied on any unpaid withdrawal liability is calculated at a rate of 18% per annum. (Casanova Aff. ¶ 22, Ex. C).

Plaintiffs seek an interest award of $26,479.88 in interest owed through October 31, 2019. (Casanova Aff. ¶ 23, Ex G[9]). Having reviewed the calculations prepared by the auditors and determined that the interest accrued at 18% per year for the period up through October 31, 2019 is in fact $26,479.88, the Court respectfully recommends that plaintiffs be awarded this amount in interest. As a total of 256 days have passed between October 31, 2019 and the date of this Report and Recommendation, the Court respectfully recommends that plaintiffs be awarded an additional amount in prejudgment interest of $44,305.92[10] for a total of **$70,785.80**.

### D. Liquidated Damages on Withdrawal Liability

ERISA provides for liquidated damages "in an amount equal to the greater of . . . interest on the unpaid contributions, or . . . liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C). Courts regularly award liquidated damages on withdrawal liability under this provision. See, e.g., Trustees of Local 813 Ins. Trust Fund v. Freedom Demolition, 2014 WL 5305983, at *5 (assessing liquidated damages on withdrawal liability as well as on unpaid contributions); Deianni v. New Media Printing, 2012 WL 3842596, at *6 (awarding liquidated damages of 20% on withdrawal liability even after denying award of unpaid contributions).

Here, the Trust Agreement provides for an award of liquidated damages equal to the greater of the amount of interest due or 20% of the withdrawal liability. (Casanova Aff. ¶ 24, Ex. C).

---

[9] Citations to "Ex. G" refer to the Fund's actuarial calculation of interest owed through October 31, 2019, filed as Exhibit G to the Motion for Default Judgment, ECF No. 10-8.

[10] The Court calculates simple interest at a rate of 18% annually on the $350,949.75 in unpaid contributions, finding a per diem rate of $173.07.

Since the Court has recommended an award of withdrawal liability totaling $350,949.75 (see supra Section B), the Court respectfully recommends that plaintiffs be awarded liquidated damages of **$70,189.95**, corresponding to 20% of the withdrawal liability.

E.  Attorneys' Fees and Costs

Plaintiffs seek $6,204.00 in reasonable attorneys' fees and $586.50 in costs incurred in connection with this action, pursuant to 29 U.S.C. § 1132(g)(2)(D).  (See Pls.' Stmt. of Damages;[11] Pls.' Mem. at 7-10; Ex. H[12]).

In support of these requests, plaintiffs have submitted the Certification of Susan Bruno, Esq., who is a partner in the firm of Cary Kane LLP (the "Firm"), which represents plaintiffs in this action.  (See Bruno Cert.[13]).  In accordance with New York State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), the Firm has submitted contemporaneous billing records, setting forth the dates and amount of time during which services were rendered, the hourly rate at which the services were charged, along with the name of the attorney and a description of services performed.  (See Casanova Aff. ¶ 30; Ex. H; Bruno Cert.).

Courts employ the "lodestar" method in calculating reasonable attorneys' fees, multiplying the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate.  See Perdue v. Kenny A., 559 U.S. 542, 546, 551-52 (2010); Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011); Arbor Hill Concerned Citizens Neighborhood Ass'n

---

[11] Citations to "Pls.' Stmt. of Damages" refer to Plaintiffs' Statement of Damages, filed as attachment 12 to plaintiffs' Motion for Default Judgment, ECF No. 10-12.

[12] Citations to "Ex. H" refer to the statements of attorney's fees which were filed as Exhibit H to plaintiffs' Motion for Default Judgment, ECF No. 10-9.

[13] Citations to "Bruno Cert." refer to the Certification of Susan Bruno, filed on October 16, 2019, filed as attachment to plaintiffs' Motion for Default Judgment, ECF No. 10-10.

v. Cnty. of Albany, 522 F.3d 182, 183 (2d Cir. 2008); Cowan v. Ernest Codelia, P.C., No. 98 CV 5548, 2001 WL 30501, at *7 (S.D.N.Y. Jan. 12, 2001), aff'd, 50 F. App'x 36 (2d Cir. 2002). Although there is a "strong presumption that this amount represents a reasonable fee," the resulting lodestar figure may be adjusted based on certain other factors. Cowan v. Ernest Codelia, P.C., 2001 WL 30501 at *7; Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999).

    1.  Reasonable Hourly Rate

When assessing whether legal fees are reasonable, the Court determines the "presumptively reasonable fee" for an attorney's services by looking to what a reasonable client would be willing to pay. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d at 183-84. To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed. Id. To determine the reasonable hourly rate applicable, the Court "looks to the district in which the reviewing court sits." Gesualdi v. Dove Mason Supply Co., Inc., No. 19 CV 1181, 2020 WL 1538746, at *6 (E.D.N.Y. March 11, 2020) (citing Scharff v. County of Nassau, No. 10-4208, 2016 WL 3166848, at *4). In Arbor Hill, the Second Circuit adopted the following factors to guide the court's inquiry as to what constitutes a reasonable hourly rate:

> 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the level of skill required to perform the legal service properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the attorney's customary hourly rate; 6) whether the fee is fixed or contingent; 7) the time limitations imposed by the client or the circumstances; 8) the amount involved in the case and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases . . . .

13

Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d at 187 n.3 (citation omitted).  A number of courts within the Second Circuit have applied these factors when awarding attorney's fees.  See Manzo v. Sovereign Motor Cars, Ltd., No. 08 CV 1229, 2010 WL 1930237, at *7 (E.D.N.Y. May 11, 2010); Adorno v. Port Auth. of New York & New Jersey, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010); Lochren v. County of Suffolk, No. 01 CV 3925, 2008 WL 2039458, at *2 (E.D.N.Y. May 9, 2008); see also Cruz v. Henry Modell & Co., Inc., No. 05 CV 1450, 2008 WL 905351, at *3 (E.D.N.Y. Mar. 31, 2008).

Among other things, courts are instructed to balance:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively . . ., the timing demands of the case, whether the attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether the attorney might have initially acted pro bono . . ., and other returns (such as reputation, etc.) the attorney might expect from the representation

Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d at 184; see also Heng Chan v. Sung Yue Tung Corp., No. 03 CV 6048, 2007 WL 1373118, at *2 (S.D.N.Y. May 8, 2007).  In awarding attorney's fees, the Court is guided by the fact that default actions are relatively simple legal matters, taking into account the attorney's degree of skill and the Court's own experience dealing with similar claims.

Here, the Firm seeks to bill at a rate of $480.00 per hour for 2.2 hours of work performed on or before August 31, 2019 by Ms. Bruno and Charles Pergue, both partners with the Firm. (Bruno Cert. ¶ 3).  After August 31, 2019, the rate increased to $520 an hour for the 9.9 hours of work performed by Mr. Pergue and Ms. Bruno.  (Id.)  According to Ms. Bruno, the Fund pays a blended rate rather than paying a higher rate for partners and a lower rate for associates.  (Id. ¶

14

6).  Ms. Bruno asserts that their rates would be higher if not for this blended rate.  (Id.)

According to the plaintiffs' Memorandum of Law, Ms. Bruno has 19 years of experience in

ERISA litigation.  (Pls.' Mem. at 8).  Mr. Pergue has over 25 years of experience engaged in

ERISA litigation.  (Id.)  Plaintiffs state that the Firm was chosen for this matter because of the

Firm's experience to handle "whatever might be necessary for this case," and "[w]hile this case

turned out to be a simple matter due to Defendants' default, the Fund could not predict this in

advance."  (Id. at 9).  Moreover, counsel claims that the Firm has institutional knowledge about

plaintiffs' operations.  (Id.)

The Court finds that a rate of $520 an hour for experienced counsel in ERISA litigation to

be somewhat higher than what is typically awarded in this district.  Irving v. G. & G. Instrument

Corp., No. 19 CV 1597, 2020 WL 1536325, at *5 (E.D.N.Y. March 31, 2020) (finding that a

"blended rate" of $250 per hour for the work of attorneys and $95 per hour for the work of

paralegals in an ERISA default judgment to be reasonable); Finkel v. Firequench, Inc., No. 20

CV 0010, 2020 WL 1323017, at *2 (E.D.N.Y. March 20, 2020) (finding the rates of $275 per

hour for associate-level work, $350 per hour for partner-level work, and $120 per hour for

paralegal works "firmly within the range of approved rates for ERISA collection work in the

district"); Local 1922 Pension Fund v. Broadway Electric Supply, Co., Inc., No. 19 CV 2344,

2020 WL 1931635, at *13 (E.D.N.Y. March 18, 2020) (finding that in an ERISA default action

"[p]revailing rates for experienced attorneys in the Eastern District of New York range from

approximately $300 to $400 per hour" (collecting cases), the court reduced the hourly rate to

$300 per hour for a partner with eight years of experience on ERISA matters, stating that "an

hourly rate of $350 exceeds the high end of the range . . . "); Gesualdi v. Dove Mason Supply

Co., Inc., 2020 WL 1538746 at *6 (stating that "Attorneys' fees in an ERISA matter were

recently awarded in this District at the hourly rate of $400 for partners, $375 for senior

associates, $275 for junior associates, and $110 for paralegals" and citing Gesualdi v. Scara-Mix,

Inc., No. 14 CV 0765, 2017 WL 5564673, at *9 (E.D.N.Y. Nov. 17, 2017)); Trustees of Pavers

and Road Builders District Council Welfare, Pension, Annuity, and Apprenticeship, Skill

Improvement and Safety Funds v. Shelbourne Construction Corp., No. 19 CV 2312, 2020 WL

1668041, at *7 (E.D.N.Y. March 5, 2020) (holding that "[i]n recent years, fees in ERISA cases

have been awarded in the Eastern District of New York at an hourly rate of $300 to $350 for

partners [and] $200 to $300 for associates").

Based on this Court's knowledge of fees common in this district, the Court finds that the

blended rate of $520.00 per hour is high for this type of action, and it is unclear why all of the

hours needed to be performed by partners in the firm, particularly given counsel's concession

that this was a relatively "simple matter."  (Pls.' Mem. at 9).  It is evident from a review of the

billing records that some of the work performed by the two partners on the matter seemed to be

the type of work that would typically be handled by junior level associates or paralegals.

Charging $520 an hour to perform tasks such as drafting certain uncomplicated documents,

including the summons, the request for the clerk's certification of default, and certificates of

service, seems excessive in light of the rates generally charged for such services by more junior

attorneys in this district.  Similarly, the performance of certain tasks, such as filings documents

on ECF, would often be done by a paralegal.  (See Ex. H).  The rates awarded for paralegal work

in this district are generally significantly lower than the rates requested by the partners here,

averaging between $90 and $120 per hour.  See, e.g., Ferrara v. PI Trucking Corp., No. 11 CV

0661, 2011 WL 7091562, at *4 (E.D.N.Y. Dec. 20, 2011) (noting that "the majority of the

ERISA default cases in this District favor somewhat lower hourly rates . . . [of] $90 for the

paralegal"); Finkel v. Firequench, Inc., 2020 WL 1323017 at *2 (finding rates of $120 per hour

reasonable for paralegal work); Gesualdi v. Dove Mason Supply Co., Inc., 2020 WL 1538746 at

*6 (finding hourly rates of $110 for paralegals to be reasonable); Trustees of Pavers and Road

Builders District Council Welfare, Pension, Annuity, and Apprenticeship, Skill Improvement and

Safety Funds v. Shelbourne Construction Corp., 2020 WL 1668041 at *7 (finding that rates of up

to $90 for non-attorney support staff to be reasonable).  Thus, the Court respectfully recommends

that the rates billed by the Firm be reduced to a blended rate of $350.00 per hour, which is more

consistent with the rates generally awarded in ERISA actions in this district.

    2. Reasonable Number of Hours

    The next step in awarding attorney's fees is determining the reasonableness of the hours

expended by counsel.  See, e.g., Irving v. G. & G. Instrument Corp., 2020 WL 1536325 at *5;

LaBarbera v. Empire State Trucking, Inc., No. 07 CV 669, 2008 WL 746490, at *4-5 (E.D.N.Y.

Feb. 26, 2007).  In reviewing a fee application, the court should exclude "excessive, redundant or

otherwise unnecessary hours."  Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009) (quoting

Hensley v. Eckerhart, 461 U.S. 424, 433-35, 440 (1983)); Gesualdi v. Dove Mason Supply Co.,

Inc., 2020 WL 1538746 at *6.  If the court finds "that some of the time was not reasonably

necessary . . . it should reduce the time for which compensation is awarded accordingly."  Louis

Vuitton Malletier, S.A. v. LY USA, Inc., 676 F.3d 83, 111 (2d Cir. 2012); see also Struthers v.

City of New York, No. 12 CV 242, 2013 WL 5407221, at *8-9 (E.D.N.Y. Sept. 25, 2013)

(reducing fees because those requested for responding to motion papers were "excessive");

Jemine v. Dennis, 901 F. Supp. 2d 365, 393 (E.D.N.Y. 2012) (reducing requested fees 10%

because the "quality and complexity of the submissions and calculations" did not reflect the

hours expended); Ehrlich v. Royal Oak Fin. Servs., No. 12 CV 3551, 2012 WL 5438942, at *3-4

(E.D.N.Y. Nov. 7, 2012) (reducing attorneys' fees because the attorney's litigation of the suit made apparent his "lack of experience" and for duplicative entries); Quinn v. Nassau Cnty. Police Dep't., 75 F. Supp. 2d 74, 78 (E.D.N.Y. 1999) (reducing one attorney's fees by 20% and another's by 30% for unnecessary and redundant time); American Lung Ass'n v. Reilly, 144 F.R.D. 622, 627 (E.D.N.Y. 1992) (finding that "use of so many lawyers for relatively straightforward legal tasks was excessive and led to duplication of work" and deducting 40% of plaintiffs' lawyer's hours).

Rather than itemizing individual entries as excessive, the court may make an "across-the-board reduction, or percentage cut, in the amount of hours." T.S. Haulers, Inc. v. Cardinale, No. 09 CV 451, 2011 WL 344759, at *3 (E.D.N.Y. Jan. 31, 2011) (citing Green v. City of New York, 403 F. App'x 626, 630 (2d Cir. 2010)). Similarly, courts routinely apply across-the-board reductions for vague entries. See, e.g., Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (affirming district court's 20% reduction in attorneys' fees for "vagueness, inconsistencies, and other deficiencies in the billing records"); Moore v. Diversified Collection Servs., Inc., No. 07 CV 397, 2013 WL 1622949, at *4 (E.D.N.Y. Mar. 19, 2013) (reducing attorney's fees by 10% due to the "vagueness and incompleteness" of some of the entries); Tucker v. Mukasey, No. 03 CV 3106, 2008 WL 2544504, at *2 (S.D.N.Y. June 20, 2008) (reducing fees by 30% in part because although some entries were detailed, others were vaguely worded or inconsistent); Marisol A. ex rel. Forbes v. Giuliani, 111 F. Supp. 2d 381, 396-97 (S.D.N.Y. 2000) (concluding that "the vagueness of some of the time records prevents the Court from determining why plaintiffs were required to expend so many hours on these tasks" and accounting for this factor  by reducing fees by 15%); Cabrera v. Fischler, 814 F. Supp. 269, 290 (E.D.N.Y. 1993) (reducing fees by 30% for vague entries with insufficient descriptions of work

performed), rev'd in part & remanded on other grounds, 24 F.3d 372 (2d Cir.), cert. denied, 513 U.S. 876 (1994).

As noted above, the Firm has submitted contemporaneous billing records, setting forth the dates and amount of time during which services were rendered, the hourly rate at which the services were charged, and the names of the individuals who provided these services, along with a description of services performed. (Casanova Aff., Ex. H). Counsel at the Firm have billed a collective 12.1 hours for their work. (Bruno Cert. ¶ 3).

Having reviewed the billing records provided, the Court finds that the number of hours billed are not objectively unreasonable. As such, the Court finds no need to reduce the hours for which plaintiffs seek fees.

Accordingly, the Court respectfully recommends that plaintiffs be awarded compensation for 12.1 hours of work performed by the attorneys at the Firm, calculated at the rate of $350, for a total of **$4,235.00**.

F. Costs

Under ERISA, plaintiffs who prevail on enforcement actions are entitled to recover reasonable costs. See 29 U.S.C. § 1132(g)(2)(D). Filing fees and service of process fees are specifically included in the statute, and therefore plaintiffs here may recover them. See 28 U.S.C. § 1920; Finkel v. Triple A Group, Inc., 708 F. Supp. 2d 277, 290 (E.D.N.Y. 2010) (awarding $818.53 in costs for filing fees, service, postage, and photocopying).

Plaintiffs have requested $586.50 in costs, corresponding to: (1) $400.00 for the filing fee in this district; and (2) $186.50 paid for service of process. (Bruno Cert. ¶ 12, Ex. H). The Court takes judicial notice of the filing fee in this district. See Gesualdi v. Dove Mason Supply Co., Inc., 2020 WL 1538746, at *7 (E.D.N.Y. March 11, 2020); Phillip Morris USA, Inc. v.

Jackson, 826 F. Supp. 2d 448, 453 (E.D.N.Y. 2011) (taking judicial notice of the filing fee for this court); Joe Hand Promotions v. Elmore, No. 11 CV 3761, 2013 WL 2352855 at *12 (E.D.N.Y. May 29, 2013) (same).  As such, the Court respectfully recommends that plaintiffs be awarded **$586.50** in costs.

CONCLUSION

In light of the foregoing, the Court respectfully recommends that plaintiffs be awarded damages in the amount of **$496,747.00**, reflecting:

 (1) **$350,949.75** in withdrawal liability;

(2) **$70,785.80** in prejudgment interest on the withdrawal liability;

(3) **$70,189.95** in liquidated damages on the withdrawal liability;

(4) **$4,235.00** in attorneys' fees; and

(5) **$586.50** in costs.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order.  See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72; Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

Plaintiff is directed to serve a copy of this Order promptly by certified mail, return receipt requested, on defendants and to provide the Court with copies of the return receipts.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated:  Brooklyn, New York
      July 13, 2020

                             /s/ Cheryl L. Pollak
                             Cheryl L. Pollak
                             Chief United States Magistrate Judge
                             Eastern District of New York